UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| LISA LYNN L.,[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, <br> Commissioner of Social Security, <br><br> Defendant. | Case No. 5:19-cv-01291-JDE <br><br> MEMORANDUM OPINION AND ORDER |

Plaintiff Lisa Lynn L. ("Plaintiff") filed a Complaint on July 15, 2019, seeking review of the Commissioner's denial of her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The parties filed a Joint Submission ("Jt. Stip.") regarding the issue in dispute on March 23, 2020. The matter now is ready for decision.

---

[1] Plaintiff's name has been partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.
# BACKGROUND

Plaintiff applied for DIB and SSI on August 5, 2015, alleging disability commencing August 16, 2013. AR 16, 242-49. On June 14, 2018, after her applications were denied initially (AR 137-38) and on reconsideration (AR 167-68), Plaintiff, represented by counsel, testified before an Administrative Law Judge ("ALJ"), as did a vocational expert ("VE"). AR 33-86.

On August 10, 2018, the ALJ issued a decision concluding Plaintiff was not disabled. AR 16-27. The ALJ noted Plaintiff had applied previously for DIB and SSI, alleging disability onset on November 2, 2011, and an ALJ found her not disabled in 2013. AR 16, 90-104. But, the ALJ found the presumption of continuing nondisability had been rebutted and the prior decision had no res judicata effect as to the non-adjudicated period here because new and material evidence showed changed circumstances, including Plaintiff's testimony and medical evidence submitted after the date of the prior decision. AR 16.

For the instant applications, the ALJ found Plaintiff was insured through December 31, 2016, had not engaged in substantial gainful activity since her alleged onset date, and had severe impairments of "degenerative disc disease, status post surgery (2010); radiculopathy; obesity; depression; and anxiety." AR 18-19. The ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment and had the residual functional capacity ("RFC") to perform sedentary work[2] except she:

---

[2] "Sedentary work" is: "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." See 20 C.F.R. §§ 404.1567(a), 416.967(a).

(1) can never perform repetitive pushing or pulling with the bilateral lower extremities; (2) can never walk on uneven terrain; (3) can never crawl, kneel, or climb ladders, ropes, or scaffolds; (4) can otherwise perform occasional postural activities; (5) cannot tolerate exposure to extreme cold, vibrations, or hazards such as unprotected heights or moving machinery; (6) can understand, remember, and carry out simple, repetitive, routine tasks involving no more than occasional interaction with the public and coworkers; and (7) cannot perform tasks requiring hypervigilance or intense concentration. AR 20-21.

The ALJ further found that Plaintiff was unable to perform her past relevant work as a nurse assistant (Dictionary of Occupational Titles ["DOT"] 355.674-014). AR 26. The ALJ further found that Plaintiff, 40 years old on the alleged onset date, is defined as a "younger individual age 18-44." AR 26. The ALJ concluded, based on her age, education, work experience, RFC, and the VE's testimony, Plaintiff could perform other occupations with jobs existing in significant numbers in the national economy, including toy stuffer (DOT 731.685-014), table worker (DOT 739.687-182), and finisher (DOT 731.687-014). AR 26-27. Thus, the ALJ found Plaintiff was not under a "disability," as defined in the Social Security Act, from the alleged onset date of August 16, 2013, through the date of the decision. AR 27. Plaintiff's request for review of the ALJ's decision by the Appeals Council was denied, making the ALJ's decision the agency's final decision. AR 1-6.

## II.
## LEGAL STANDARDS

### A. Standard of Review

Under 42 U.S.C. § 405(g), this court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir.

2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless (Molina, 674 F.3d at 1115), that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

**B.     The Five-Step Sequential Evaluation**

When the claimant's case has proceeded to consideration by an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Ford v. Saul, 950 F.3d 1141, 1148-48 (9th 2020); Molina, 674 F.3d at 1110.

First, the ALJ considers whether the claimant currently works at a job that meets the criteria for "substantial gainful activity." Molina, 674 F.3d at 1110. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment

4

or combination of impairments that has lasted for more than twelve months. Id. If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015). If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from her impairments. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Social Security Ruling ("SSR") 96-8p.

After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform her past relevant work, either as she "actually" performed it when she worked in the past, or as that same job is "generally" performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016). If the claimant cannot perform her past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, she is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See id. at 1099.

The claimant generally bears the burden at each of steps one through four to show she is disabled, or she meets the requirements to proceed to the next step; and the claimant bears the ultimate burden to show she is disabled. See, e.g., Ford, 950 F.3d at 1148; Molina, 674 F.3d at 1110; However, at Step Five, the ALJ has a "limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in

the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

## III.

## DISCUSSION

The parties present one disputed issue: whether the ALJ properly assessed Plaintiff's subjective complaints.[3] Jt. Stip. at 4.

**A.   Applicable Law**

Where a disability claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, absent evidence of malingering, the ALJ must provide "'specific, clear and convincing reasons for' rejecting the claimant's testimony regarding the severity" of the symptoms. Treichler v. Comm'r Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (citation omitted); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude that the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Id. at 885 (citation omitted). But if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the Court's role to "second-guess" it. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Finally, the ALJ's credibility finding may be upheld even if not all the ALJ's reasons for rejecting the claimant's testimony are upheld. See Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004).

---

[3] The parties frame the issue as "[w]hether the ALJ's [RFC] assessment is supported by substantial evidence?" Jt. Stip. at 3. Plaintiff's challenge, however, is limited to ALJ's assessment of her subjective complaints. She makes no specific challenge to the RFC or the ALJ's assessed limitations.

B.  **Subjective Symptom Evidence**

    1.  Written Submissions

To support her applications for benefits, Plaintiff submitted disability reports, a function report, and a third-party function report from her daughter. AR 285-92, 312-29, 332-39.

    2.  June 2018 Hearing Testimony

Plaintiff's testimony at the June 2018 hearing is summarized as follows. She was self-employed from 2001 to 2002, and after that she worked with disabled people. AR 37. She was a facility manager, which included cooking, cleaning, and administration of "med tabs." AR 38. She stopped working in 2009 after she twisted her back lifting a patient, and she has had chronic back pain ever since. AR 41-42. She had back surgery in 2010, but her condition worsened and she's now in a wheelchair. AR 42-43.

At the time of the hearing, she weighed 280 pounds. AR 39. Her weight has gone up from 165 a couple of years ago. AR 39. She attributes this to her immobility and inactivity. AR 39-40. Her condition is worse now than ever because of her weight gain. AR 43. She experiences severe pain, mostly in her back and legs. AR 43-44. Since 2013, she has been unable to get around or sit for long, about 30 minutes before she must lie down on her right side. AR 43, 51. She cannot lie on her back. AR 43. Her legs can also give out or go numb. AR 44. Pain shoots and burns all the way down to her feet, and up her back. AR 44. She also experiences dizziness from her pain. AR 51.

She wears a brace on her wrist for carpel tunnel. AR 45. Her fingers and thumb can go numb and swell. AR 45. Pain from this can go down her right arm to her elbow. AR 45. She does not have any problems with her left hand except some pain and difficulty using it, but not as bad as her right. AR 46. The numbness in her right wrist started two or three years ago. AR 46. She can lift about five or ten pounds with her right hand. AR 54.

She treats her physical pain with medication, including oxycodone, tramadol, and gabapentin. AR 48. Her pain can reach level 10, but it will decrease to an average of eight or nine with medication. AR 44. Her pain interferes with her ability to sleep, so she takes amitriptyline and Abilify to help her with that. AR 50.

She also has migraine headaches about twice a week. AR 45. They can last overnight, or up to two days. AR 45. She takes Topamax for her headaches. AR 50.

She has major depression, anxiety, panic attacks, and post-traumatic stress disorder. AR 47, 50. Her mental health issues stem from her mother hating her as a child. AR 47-48. Her issues interfere with her ability to concentrate, focus, and remember, and she lacks patience. AR 48, 52, 55. For her mental health, she takes Cymbalta, Seroquel, and Trazadone. AR 49, 54-55.

Besides medication she does not do anything else for treatment, such as physical therapy or other exercise. AR 48, 54. Nothing else has been recommended by medical professionals for her in the future. AR 51.

Her 26-year-old daughter currently cares for her and supports her. AR 40. They "bounce around," living at different homes. AR 40-41. Plaintiff receives food stamps and Medigap. AR 41. Her daughter drives her where she needs to go. AR 45, 52. The last time Plaintiff had a driver's license was 2008, but it was suspended due to speeding tickets. AR 52.

Plaintiff would like to work, but she cannot because of her condition. AR 52.

### C. Analysis

The ALJ summarized Plaintiff's hearing testimony and stated that he also considered Plaintiff's function report. AR 21. He found that Plaintiff's statements in the report were of the same general nature as her subjective

complaints from her testimony, except noting that Plaintiff further alleged in the report anger problems and thoughts of hurting herself. AR 21 (citing AR 319).

The ALJ then found her medically determinable impairments could reasonably be expected to cause some of her alleged symptoms, but her statements "concerning the intensity, persistence[,] and limiting effects of [the] symptoms" were inconsistent with the evidence. AR 22. Specifically, the ALJ found: (1) Plaintiff's testimony was not fully supported by medical record; (2) there was no objective support for the need for a wheelchair; (3) Plaintiff's own treating physicians found her complaints greatly outweighed objective findings; (4) most of Plaintiff's treatment occurred prior to the previous ALJ decision; and (5) Plaintiff's treatment was routine, conservative, and non-emergency.[4] AR 22-25.

Preliminarily, the Court notes the ALJ did not reject Plaintiff's testimony in its entirety. He found that Plaintiff was limited to less than the full range of sedentary work, which necessarily credited much of Plaintiff's subjective complaints. AR 20-21. Indeed, the ALJ specifically stated that he "factored into the limitations assessed" Plaintiff's subjective complaints. AR 25. However, as explained below, to the extent the ALJ did not further credit aspects of Plaintiff's testimony, he provided legally sufficient reasons for doing so.

---

[4] In the joint submission, Plaintiff addresses only the first, third, and fifth reasons. Jt. Stip. at 5-7, 12-13. The Court may take a Plaintiff's failure to address the other aspects of the ALJ's reasoning as a waiver of a challenge to those aspects. Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006) (claimant waived issues not raised before the district court); Owens v. Colvin, 2014 WL 5602884, at *4 (C.D. Cal. Nov. 4, 2014) (claimant's failure to discuss, or even acknowledge, ALJ's reliance on certain reasons waived any challenge to those aspects of ALJ's finding).

First, the ALJ found that Plaintiff's allegations of chronic back pain were not entirely supported by the medical record. AR 22. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in [her] credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005); see also Rollins, 261 F.3d at 857. For example, the ALJ cited a March 2014 lumbar spine x-ray which showed a number of normal or mild findings, including (1) no scoliosis; (2) no evidence of fracture, misalignment, or subluxation; (3) well-preserved intervertebral disc spaces; (4) no significant degenerative changes in the form of hypertrophic spurring or sclerosis; (5) no spondylolysis or spondylolisthesis; and (6) an impression of only "possible mild osteoarthritis." AR 22-23, 1227-28. The ALJ also noted that there were no objective findings showing any sensory deficits relating to the lower extremities. AR 22, 1082-83. The ALJ further noted a May 2014 examination, but no objective clinical findings regarding Plaintiff's back were noted. AR 23, 1235-38. Finally, the ALJ cited records from April 2017 to January 2018 that also did not contain any objective clinical findings other than noting Plaintiff presented in a wheelchair. AR 23, 1831-41. As these are supported by the record, the ALJ properly considered the inconsistency between the medical evidence and Plaintiff's subjective symptom complaints as one of multiple valid factors supporting the decision. See Burch, 400 F.3d at 681.

Second, the ALJ stated that Plaintiff presented at the hearing in a wheelchair, but there was a lack of findings supporting the medical need for that assistive device. AR 22. This is supported by the record, and properly relied upon by the ALJ. See AR 115 (medical consultant stating "[n]ot sure if [Plaintiff's] wheelchair is medically needed"; Dr. Haaland noting "no significant findings to support a need for a wheelchair"), 129 (same); 145 (Dr. K. Vu stating wheelchair "is not actually medically necessary"); 159 (same);

see Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (while an ALJ may not rely on her own observations of the claimant at the hearing "as the sole reason for rejecting the claimant's complaints," the ALJ may use "ordinary techniques of credibility evaluation," including her observations of the claimant's presentation at the hearing, to evaluate the credibility of subjective allegations); cf. Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (affirming decision where ALJ determined that the claimant's non-prescribed use of cane and wheelchair adversely affected his credibility).

      Third, Plaintiff's own treating physicians remarked that her subjective complaints outweighed the objective findings. AR 22-23. For example, Dr. Keola Chun stated that Plaintiff "has subjective complaints that are greatly in excess of her objective evaluation," was referred to pain management "because of her excessive need for narcotic medications," and noted a "very familiar" history of declining to follow treatment recommendations. AR 1114. Later, Dr. Marker noted that Plaintiff had asked him on several occasions for more opiate medication, which he refused to do, and noted Dr. Chun's assessment that Plaintiff's "subjective complaints greatly outweigh her objective findings," which Dr. Marker said he has "been saying . . . since day one of [his] consult with [Plaintiff]." AR 1078. On another occasion, Dr. Marker stated that he was "very concerned with [Plaintiff]'s medical usage," and documented an early refill on her narcotic medication and how she had misrepresented whether she refilled the medication, causing Dr. Marker to warn her that other violations would cause him to discharge her from his practice.[5] AR 1083-84,

---

[5] After the Commissioner raised this information in the joint submission, Plaintiff argued in the reply that the ALJ did not rely on it in the decision. Jt. Stip. at 12. However, the ALJ discussed Dr. Marker's records and referenced similar comments by "other treating physicians." AR 22-23. Based on the record "as a whole," the ALJ's reliance on this ground is a reasonable

1090. Finally, the state agency also noted "symptom magnification" in its review of Plaintiff's medical records. AR 115, 129. The ALJ properly considered this factor in assessing Plaintiff's testimony. See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (an ALJ may consider a variety of factors in weighing a claimant's believability, including ordinary techniques of credibility evaluation, prior inconsistent statements, and testimony by the claimant that "appears less than candid"); Tonapetyan, 242 F.3d at 1148 (ALJ properly discounted claimant's subjective complaints based on tendency to exaggerate symptoms).

      Fourth, the ALJ found that most of Plaintiff's treatment records occurred prior to the previous ALJ decision. Indeed, Plaintiff's 2010 surgery and records accompanying it were well before the relevant period here, which began in August 2013. AR 22, 97-100. Moreover, Plaintiff admitted that besides medicinal management, she is not taken part in any other treatment, and no other treatment recommendations are on the horizon. AR 48, 51, 54-55; See, e.g., Colter v. Colvin, 554 F. App'x 594, 596 (9th Cir. 2014) (ALJ properly discounted claimant's credibility in part because her testimony was undermined by her own admissions); Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1464 (9th Cir. 1995) (holding that the ALJ did not err in rejecting the claimant's continuing disability claim based, in part, on a lack of medical care during the relevant period).

      Plaintiff challenges the ALJ's final reason, arguing that her narcotic medication is not conservative treatment. Jt. Stip. at 5-6. The Court need not decide whether this reason was proper. Even assuming, without deciding, the ALJ may have erred in qualifying Plaintiff's treatment as conservative or in

---

interpretation of the decision. See Brown-Hunter, 806 F.3d at 492; Reddick, 157 F.3d at 720; Molina, 674 F.3d at 1111.

other aspects of his assessment of Plaintiff's testimony, any error would be harmless considering the other valid reasons for rejecting the testimony. See Reyes v. Berryhill, 716 F. App'x 714, 714 (9th Cir. 2018) (where ALJ provided valid reasons for finding claimant's testimony not entirely credible, "[a]ny error in other reasons provided by the ALJ was harmless"); Batson, 359 F.3d at 1197.

The Court finds the ALJ provided sufficiently specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony, that is, its inconsistency with the medical evidence, the lack of support for a wheelchair, conclusions by Plaintiff's treating physicians that her complaints outweighed medical findings, and that most of her treatment occurred prior to the relevant period and previous disability adjudication. Those grounds are sufficient to affirm the ALJ's decision on the issue.

Accordingly, reversal is not warranted.

## IV.

## ORDER

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

Dated: April 22, 2020

_____
JOHN D. EARLY
United States Magistrate Judge

13